IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-1070-ECM-CWB |
| | ) (WO) |
| LT. ROBBINS, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**[1]

John Andrew Kister, a *pro se* inmate, has filed a complaint under 42 U.S.C. § 1983 to challenge actions allegedly occurring at Bullock Correctional Facility. (Doc. 1 at pp. 4-6). Named as defendants are Lt. Bryant Robbins and Warden Patrice Richie Jones. (*Id*.). Kister alleges that he was assaulted by inmates on December 4, 2020 and that Lt. Robbins and Warden Jones failed to protect him. (*Id*. at p. 5). Kister additionally alleges that Lt. Robbins used excessive force against him, *i.e.*, that Lt. Robbins "punched me several times" and "also dragged and pushed me." (*Id.*). Kister seeks $100,000.00 in monetary damages and placement inside the RTU at Donaldson Correctional Facility or administrative segregation. (*Id*. at p. 6). It is unclear whether Lt. Robbins and Warden Jones are sued in their individual or official capacities.

---

[1] References to documents filed in this action are designated as "Doc." Page references are to the electronic numbering affixed by the CM/ECF filing system and may not correspond to pagination on the original version as presented for filing.

1

Lt. Robbins and Warden Jones jointly filed an Answer and Special Report (Doc. 25) regarding Kister's claims, which was supplemented to include additional factual information. (Docs. 56 & 58). After reviewing the information submitted by Lt. Robbins and Warden Jones, the court directed Kister to file a written response supported by affidavits or other statements made under penalty of perjury. (Doc. 59). Kister thereafter filed various responsive materials. (Docs. 60, 61, & 62). Kister also has filed several other sworn statements and verified materials over the course of this action. (Docs. 1, 1-1, 33, & 45).

The parties were previously given notice that "the court may at any time [after expiration of the time for Kister to file a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response …, rule on the dispositive motion in accordance with the law." (Doc. 59 at pp. 2-3). Pursuant to that disclosure, the undersigned will now treat the Answer and Special Report as having presented arguments for summary judgment and will recommend that summary judgment be granted in favor of Lt. Robbins and Warden Jones on all claims.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party …. [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id*. Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp*., 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A). To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a).

**III. Facts**

Kister claims that he was assaulted by inmates at Bullock Correctional Facility on December 4, 2020 and that Lt. Robbins and Warden Jones failed to protect him. (Doc. 1 at p. 5).

He more specifically alleges that he was "struck from behind on my head with a metal cane [and] was also struck several times on my right arm and hand." (*Id*.; *see also* Doc. 1-1).

An inmate Body Chart created on December 14, 2020 at 6:59 a.m. did show "healing, crusted abrasions" on Kister's parietal skull and right forearm with "no redness, drainage, tenderness noted." (45-1 at p. 1). Kister later submitted a sick call request on March 1, 2021 complaining that a lump on his head remained "tender" from the December 4, 2020 incident. (Doc. 33-1 at p. 1; Doc. 45-3 at p. 1). A progress report from March 3, 2021 reflects that Kister continued to have a painful lump on the left side of his head, which he attributed to the December 4, 2020 incident. (Doc. 45-2 at p. 1). The progress report further reflects that Kister complained of right-side shoulder pain that had persisted for a month but that he reported not recalling how the injury occurred. (*Id.*). A subsequent progress note from a March 5, 2021 evaluation reflects that Kister again complained at that time of "right shoulder pain" and "left side scalp soreness." (Doc. 33-1 at p. 2).

Kister asserts that when he reported the attack, Lt. Robbins "put me right back into the RTU, albeit in a different dorm - which means nothing as the dorms intermingle several times a day." (Doc. 1 at p. 5). Kister additionally claims that "Lt. Robbins hit me, pushed me, and pulled me towards the RTU dorms" (Doc. 62 at p. 1), that "Lt. Robbins moved the prisoner who hit me with the metal lamp onto the bunk directly below mine" (*Id*.), and that Warden Jones "condones violence by prisoners and her staff, as neither were punished for this incident" (*Id.* at p. 2).

In response, Lt. Robbins has stated under oath that "I have never been made aware that any inmate or officer intended to attack Kister" and that "I never placed my hands or any equipment on inmate Kister." (Doc. 58-2 at p. 2). Warden Jones likewise has stated under oath that she

4

has seen "no objective factual evidence to indicate any substantial risk of serious harm that exist[ed] to inmate Kister ... [nor did she have] knowledge of any threat to inmate Kister at any time." (Doc. 58-1 at pp. 2-3: "Kister did not tell me or any other ADOC official that other inmates posed any harm to his safety on or around December 4, 2020, or before or after the attack.").

IV. Discussion

    A.    **Eleventh Amendment immunity bars Kister's damages claims against Lt. Robbins and Warden Jones in their official capacities.**

Lt. Robbins and Warden Jones are entitled to absolute immunity against any claims Kister might be asserting against them in their official capacities. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). With specific respect to the type of claims now being asserted by Kister, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, Lt. Robbins and Warden Jones are both entitled to sovereign immunity as to any claims for monetary damages against them in their official capacities. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under

the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

> **B. Kister has failed to demonstrate a genuine dispute of material fact as to his claims against Lt. Robbins and Warden Jones for deliberate indifference.**

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" toward an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and yet disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).[2]

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and ordinary lack of care for a prisoner's health or safety will not support an Eighth Amendment

---

[2] "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of ... the prison staffs and administrative personnel. ... They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (internal quotation marks omitted). Nonetheless, the Eleventh Circuit has consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted).

6

claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). The law is settled that both objective and subjective elements are necessary. *Caldwell v. Warden, FCI Talladega*, 748 F.3d at 1090, 1099 (11th Cir. 2014).

With respect to the objective element, an inmate must show that "an objectively substantial risk of serious harm … exist[ed]." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference … ." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."). And finally, "once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028-29. In sum, a prison official cannot be held liable

under the Eighth Amendment unless there is an objectively substantial risk of serious harm to an inmate, the prison official had subjective knowledge of the risk, and despite such knowledge the prison official consciously disregarded the risk. *Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

Here, Kister alleges that Lt. Robbins and Warden Jones failed to protect him from an inmate assault at Bullock Correctional Facility. Based upon a careful review of all evidence in the record, the undersigned concludes that Kister has failed to present evidence that either Lt. Robbins or Warden Jones was aware that he was at substantial risk of suffering serious harm from an inmate assault on or leading up to December 4, 2020. There simply is no evidence of any advance warning such that the assault reasonably could have been anticipated or prevented. Nor is there any evidence of an extended altercation that could have been stopped. Under the circumstances presented, the undersigned therefore concludes that summary judgment is due to be granted in favor of Lt. Robbins and Warden Jones on Kister's claims for deliberate indifference. *See Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

    **C.    Kister has failed to demonstrate a genuine dispute of material fact as to his claim against Lt. Robbins for excessive force.**

Claims of excessive force are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *See Campbell*, 169 F.3d at 1374. Just as with claims for deliberate indifference, claims asserting an Eighth Amendment excessive force violation include both

8

subjective and objective components. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.*; *see also id.* at pp. 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotations and citations omitted); *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The subjective component requires that "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21.

The Eleventh Circuit has summarized the excessive force standard as follows:

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002); *see also Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010) (citing *Campbell*, 169 F.3d at 1375).  Under this analysis, a plaintiff may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987).

The Eleventh Circuit has further stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security.").  And correctional officers generally are authorized to use force when a prisoner "fails to obey an order." *Pearson*, 665 F. App'x at 864 ("Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted); *Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

Kister alleges that Lt. Robbins used excessive force when he "hit me, pushed me, and pulled me towards the RTU dorms" following the December 4, 2020 incident.  (Doc. 62 at p. 1). However, Kister acknowledges that he "refused to return to the RTU dorms." (*Id*.).  Such an admitted refusal to follow a direct command weighs in favor of Lt. Robbins's alleged application of force.  *Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019) ("Given Sears' admitted failure to obey commands and his resistance to being handcuffed, some use of force was necessary to

10

maintain or restore order."). Moreover, the court is left to speculate at the specifics of the alleged use of force—as Kister merely states that "Lt. Robbins hit me, pushed me, and pulled me towards the RTU dorms." (*Id.*). Kister does not provide any evidence that Lt. Robbins did more than was necessary to maintain or restore discipline; he has not presented any evidence of conduct that rose to the level of "wantonness in the infliction of pain" or that would elevate his claim "beyond a mere dispute over the reasonableness of the force used." *See Brown*, 813 F.2d at 1188.

The court also must consider the absence of serious injury suffered by Kister. *See Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). The inmate Body Chart from December 14, 2020 showed only "healing, crusted abrasions" to Kister's parietal skull and right forearm with "no redness, drainage, tenderness noted." (45-1 at p.1). Kister later reported on March 1, 2021 that the lump on his head remained "tender" (Doc. 33-1 at p. 1 and Doc. 45-3 at p. 1), but an x-ray of Kister's skull taken on March 5, 2021 showed "no fractures" (Doc. 33-1 at p. 4). And although a progress note dated March 3, 2021 reflects that Kister complained of right-side shoulder pain that had persisted for a month, Kister apparently reported that he could not remember how he injured his shoulder. (Doc. 45-2 at p. 1). In total, Kister received only acetaminophen (*Id.*) and meloxicam (Doc. 33-1 at p. 2) for his complaints. Such an absence of serious injury weighs against a finding of excessive force under the circumstances of this case. *See Miles,* 757 F. App'x at 830 (finding no "serious injury" when the plaintiff's only treatment was Tylenol).

Even construed most favorably to Kister, the record evidence would not support a finding of excessive force under the circumstances presented. Lt. Robbins therefore is entitled to summary judgment on Kister's claim for excessive force in violation of the Eighth Amendment. *See Whitley*, 475 U.S. at 320-21; *Hudson*, 503 U.S. at 8; *Skrtich*, 280 F.3d at 1300-1301.

### D. Kister's supervisory capacity claims are not viable.

Kister asserts that Warden Jones "condones violence by prisoners and her staff, as neither were punished for this incident." (Doc. 62 at p. 2). To the extent Kister is attempting to allege that Warden Jones is liable in her supervisory position for the actions or omissions of her subordinates based on a theory of respondeat superior, such a claim must fail. The law is well established that supervisory officials cannot be held vicariously liable in § 1983 actions. *See, e.g., Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone*, 326 F.3d at 1360 (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).

Liability could attach to Warden Jones only if she "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [her] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Based upon a careful review of the record, it is clear that Warden Jones neither participated in nor had direct involvement with the underlying events. (*See* Doc. 58-1). To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials, the undersigned concludes that Kister has failed to present any evidence in that regard. Accordingly, summary judgment is due to be granted in favor of Warden Jones on any claims asserting respondeat superior/vicarious liability.

## V.     Conclusion

For all of these reasons, it is the **RECOMMENDATION** of the Magistrate Judge that:

1. the defendants' Answer and Special Report (Doc. 25), which is construed as a motion for summary judgment, be granted;

2. summary judgment be entered in favor of Lt. Robbins and Warden Jones on all claims; and

3. this case be dismissed with prejudice in its entirety.

It is **ORDERED** that any objections to this Recommendation must be filed by **January 5, 2024**. An objecting party must identify the specific portion of any factual findings or legal conclusions to which objection is made and must describe in detail the basis for the objection(s). Frivolous, conclusive, or general objections will not be considered.

After receiving all objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1. No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 22nd day of December 2023.

CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE

14